### SUPERIOR SKYLIGHT CO., Inc., v. ZERBE CONST. CO., Inc., et al.

(Circuit Court of Appeals, Second Circuit. February 1, 1926.)

#### No. 173.

Patents ⚫═328.

Goldman patent, No. 1,009,502, for skylight with automatic fire windows, *held* invalid for anticipation.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the Superior Skylight Company, Inc., against the Zerbe Construction Company, Inc., and others. Decree for defendants' (5 F.[2d] 982), and plaintiff appeals. Affirmed.

Appeal from a decree of the District Court for the Eastern District of New York, dismissing a bill in equity for the infringement of patent 1,009,502 for lack of infringement.

The suit was the usual one for the infringement of a patent to one Barney Goldman for a skylight with fire windows, which should open automatically. In the frame of the skylight were a number of window openings, the windows hinged at the bottom. The jambs extended outwardly from bottom to top, so that, when the window closed against them, it was itself on an incline. It was held against the jamb by a rope, which ran through a pulley just inside the top of the window frame. This rope was connected by a fusible link of lead to a second rope, which held the windows in place. The operation was that, when the fire melted the fusible link, the windows would fall open by their own weight.

The claims read as follows:

"1. A skylight comprising a frame projecting from the roof of a building and having an opening with an inclined jamb, and provided with an offset at the top of the jamb, a cover pivoted to the lower part of the jamb, means connected to the cover for securing the cover onto the jamb, and means attached to the said connection for automatically releasing the cover to swing downwardly to its open position.

"2. A skylight comprising a frame projecting from the roof of a building and having an opening with an inclined jamb, and provided with an inclined offset at the top of the jamb, a cover pivoted to the lower part of the jamb, a flexible connection operatively secured to the cover for holding the cover onto the jamb, a fusible link attached to and situated between the end of the connection and the cover for automatically releasing the cover to swing downwardly to its open position.

"3. A skylight comprising a frame projecting upwardly from the roof of a building and having a number of openings with inclined jambs, and offset tops located in the sides and ends of the frame, covers pivoted to the lower portions of the jambs, means connected to the covers for securing the covers over the openings and onto the jambs, and means relative to each connection for automatically releasing each cover to swing downwardly to its open position.

"4. A skylight comprising a frame projecting upwardly from the roof of a building and having a number of openings with inclined jambs, and sloping offset tops located in the sides and ends of the frame, covers pivoted to the lower portions of the jambs, a flexible connection operatively secured to each cover and adapted to hold the cover onto the opening, a fusible link attached to and located between the end of each connection and the cover for automatically releasing the cover to swing downwardly to its open position."

The infringing structure was substantially the same, except that the jambs, instead of extending out, were so thick that the hinge of the window set on the inner side of the jamb was some inches nearer the interior of the building than the free top, which was stopped near the outside of the jamb. This put the windows on an incline, and when the fusible links in their chains melted they would fall outwardly.

The defendant put in evidence volume 27 of the transactions of the American Society of Mechanical Engineers, especially an article by one Freeman on "The Safeguarding of Life in Theaters." This had been prepared after the great Iroquois fire, and was concerned with methods by which smoke could be quickly released from the rigging loft of a theater stage. On page 96 of the publication was Figure 7, which contained automatic windows similar to those of the defendant, released by fusible catches, one part of which was fixed to the window and

the other to the lintel. They operated by gravity when the catches melted. These, however, were shown as set in the walls of the rigging loft, and not in a skylight placed upon the roof of the loft itself. .

The District Judge dismissed the bill because of noninfringement, holding the patent valid.

William E. Warland, of New York City, for appellant.

Cox, Kent & Campbell, of New York City (Clarence G. Campbell, of New York City, of counsel), for appellees.

Before HOUGH, MANTON, and HAND, Circuit Judges.

PER CURIAM. We agree that the decree was right, but not for the reasons given. To us it seems that the patent was infringed, but invalid, if interpreted to cover the defendant's skylight. We rely for anticipation upon Freeman's article in volume 27 of the Transactions of the American Society of Mechanical Engineers. The only differences between the defendant's skylight and Freeman's windows are that his were set in the walls of the rigging loft and were held by fusible catches, instead of by chains with fusible links. Neither difference appears to us patentable.

Freeman's windows were designed for exactly the same purpose as Goldman's and, being set in the rigging loft, would be generally, if not uniformly, higher than the roof of the auditorium. Of course, they must be unobstructed to open at all. We recognize that Goldman's windows were in a skylight, and that a skylight occupies only a part of the roof, but that appears to us of no importance in function or method. The only invention lay in the means of securing their automatic opening when the stage got afire. That occurs in exactly the same way, whether they are set in the walls of the loft, or in the sides of a skylight on top of the loft. Indeed, such skylights were disclosed by Freeman himself in his Figures 5, 5a, 5b, 5c, and 5d. These are distinguished from the patent in suit only because the windows are vertical, instead of inclined, and open by counterweights. Goldman did no more than to put the windows of Figure 7 into the skylight of Figure 5. It seems to us that Freeman had exhausted all the invention which was in the idea.

This covers claims 1 and 3, which do not include the feature of a "flexible connection" with a fusible link. But that was in Freeman's figures, 5 et seq., and also in Voight-

mann, 1898, Burton, 1900, and Chadwick, 1910, all for fire windows. This covers claims 2 and 4.

It is quite true that Freeman's ideas do not seem to have borne fruit, but they were disclosed none the less, and such modification, or rather combination, of them as Goldman made will not justify a monopoly.

Decree affirmed.